FILED
2015 Sep-21  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| DEBRA ANN GREGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 6:14-cv-00302-JHE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Debra Ann Gregg ("Gregg") seeks review, pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Gregg timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  After careful consideration of the record, and for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Gregg was fifty-five years old, having been born August 31, 1957, at the time of her hearing before the Administrative Law Judge ("ALJ"), on January 7, 2013.  (Tr. 28, 48).  Gregg has approximately four years of college education, with an associate's degree in liberal arts, (tr. 28), and previously worked as a stock clerk, a cashier, and a library assistant.  (Tr. 31).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 11).

Gregg applied for DIB on September 22, 2011, and SSI on July 10, 2012, alleging an initial onset date of May 15, 2010.[2]   (Tr. 40, 48-49).   Gregg's DIB application was denied on May 17, 2012.  (Tr. 50-55).    Gregg's application for SSI was subsequently denied on July 10, 2012.  (Tr. 49).  Gregg requested a hearing on June 27, 2012.  (Tr. 60).   After a hearing on both applications, the ALJ denied Gregg's claim on April 4, 2013.  (Tr. 13-21).  Gregg sought review by the Appeals Council, but the Council denied her request on December 18, 2013.  (Tr. 1-3).  On that date, the ALJ's decision became the final decision on the Commissioner.  Gregg then initiated this action on February 19, 2014.  (Doc. 1).

## II. Standard of Review[3]

The Court's review of the Commissioner's decision is narrowly circumscribed.   The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the proper legal standards were applied.   *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.  2002).  The Court must "scrutinize the record as a whole ... to determine if the decision reached is reasonable ... and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  This Court will determine the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  Substantial evidence is "more than a scintilla, but less than a preponderance."

---

[2] For purposes of DIB, Gregg's date of last insured was June 30, 2012.  (Tr. 40).

[3] The legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

*Id.* The Court must uphold factual findings supported by substantial evidence. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attached to the [ALJ's] determination of the proper legal standards to be applied...." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the Court finds an error in the ALJ's application of the law, or if the ALJ failed to provide the Court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To establish entitlement for a period of disability, DIB and SSI, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505 (a); 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment which 'must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.'" 20 C.F.R. §§ 404.1508, 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

---

[4] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2014.

(1)  whether the claimant is currently engaged in substantial gainful activity;

(2)  whether the claimant's alleged impairment (or combination of impairments) is "severe";

(3)  whether the claimant's severe impairment satisfies or medically equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1;

(4)  whether the claimant has the residual functional capacity to perform past relevant work; and

(5)  whether the claimant can perform other work in the national economy given [her] residual functional capacity, age, education, and work experience.

*Frame v. Commissioner, Social Sec. Admin.,* 596 Fed. App'x 908, 910 (11th Cir. 2015)[5] (quoting §§ 404.1520(a)(4)(i)-(iv), 416.920(a)(4)(i)-(v)).  If the claimant has satisfied steps one and two, she will automatically be found disabled at step three if she suffers from a listed impairment.  *See e.g., Dixon v. Astrue*, 312 Fed. App'x 226, 227 (11th Cir. 2009) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Commissioner to show that the claimant can perform some other available job.  *Id.* at 227-228.  The Commissioner must further show that such work exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Gregg had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15).  At Step Two, the ALJ found that Gregg has the severe

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

impairments of diabetes mellitus, obesity, and polymyositis.  (Tr. 16).  The ALJ noted Gregg's diagnoses of depressive and anxiety disorders were also medically determinable mental impairments, but rated them as non-severe, finding they caused only minimal limitations.  (*Id.*)  The ALJ found no medical evidence to support the plaintiff's allegations of fibromyalgia and PTSD.  (Tr. 16-17).  At Step Three, the ALJ found Gregg had no impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17).  The ALJ next determined that Gregg retained the residual functional capacity ("RFC") to perform a full range of medium work.  (*Id.*)  Thus, at Step Four, the ALJ found that Gregg could return to her past relevant work as a cashier and a library assistant, eliminating the need for the ALJ to reach Step Five.  (Tr. 21).  Therefore, Gregg was found not to be under as disability at any time through the date of the decision.

## V.  Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986)  ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).  This Court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  However, the court

"abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Gregg contends the ALJ erred by rendering a decision not supported by substantial evidence. Specifically, Gregg claims the ALJ's RFC finding she could perform the full range of medium level work was erroneous because the "Medical Vocation Rules (MVR) may be applied only when additional limitations to a range of work . . . are purely non exertional or have little or no effect on the occupational base . . ." and here "[t]he likelihood of there being no postural or other limitations of any kind to medium work appears slim...." (Doc. 13 at 7). Gregg argues her severe impairments of obesity and polymyositis cause greater limitations than the ALJ found. (Doc. 13 at 7-8). Gregg points to no medical evidence in support of this argument. Instead, Gregg cites only to the consultative physician's finding that she has "joint tenderness." (Doc. 15 at 7; tr. 201).

Gregg's treating physician's records reflect diagnoses of diabetes, chronic anxiety, depression, obesity, and neuropathy. (Tr. 179-183, 185-188, 239). However, during her consultative physical examination, Gregg had full range of motion in her back, hips, knees, ankles, shoulders, elbows, and wrists. (Tr. 196-197). Despite her complaints of wide-spread severe pain and tenderness at multiple trigger points, the consultative examiner noted Gregg had a normal gait and could heel toe walk, squat, rise, normal dexterity in her hands, and full motor function. (Tr. 200-201). Upon psychological examination, Gregg had no major affective disorder and no significant anxiety disorder. (Tr. 204). Dr. Jerry Gragg, Psy.D., noted Gregg had a fairly long history of depressive mood, but found it to be adequately treated. (Tr. 205). Dr. Gragg opined that Gregg's depression did not impede her employability and thought gainful employment "would be helpful to her." (*Id.*)

6

During the hearing, Gregg testified she was fired from her job as a cashier because she missed too many days from work, but then collected unemployment benefits. (Tr. 29-30). She alleged her hands stayed numb from diabetic neuropathy, interfering with her ability to do anything with her hands. (Tr. 34-35). When asked about her allegations of fibromyalgia, Gregg testified she has nightmares and sleeplessness from it, as well as a burning pain in her back and legs. (Tr. 35). However, when she was hospitalized due to diabetes in July 2012, Gregg did not complain of pain. (Tr. 226). Although those records reflect "[Gregg] verbalized some generalized achy feeling that she states is from fibromyaligia" (tr. 213-214), she was noted to have no tenderness in her back and normal range of motion in all extremities. (Tr. 220).

Thus, while Gregg does suffer from severe impairments, there is no record evidence these impairments impede her ability to engage in work-related activity. For example, while Gregg argues Social Security Ruling 02-1p recognizes "that obesity can cause limitations in all exertional and postural functions, (doc. 13 at 8), the record contains no medical evidence that Gregg has any such limitations. *See e.g., Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (per curiam) (noting that the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work). Because no record evidence supports a finding that Gregg could not return to her past relevant work as a cashier and a library assistant, the fact that Gregg has impairments which could produce limitations which prevent such work is not a relevant consideration. *See e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("it is the claimant's responsibility to introduce evidence in support of her application for benefits.").

Gregg further argues that by applying the Medical-Vocations Guidelines ("the Grids") to his determination, the ALJ impliedly found she could maintain the mental activities required for

competitive employment.[6]   (Doc. 13 at 9).    *See* 20 C.F.R. pt. 404, subpt. P, app. II.   She contends that, if she was limited to simple unskilled work because of an inability to maintain persistence and pace, she would meet the Grid for a finding of disability if limited to sedentary or light work.   *Id*.   There is no record evidence suggesting Gregg is so limited.   Gregg points to no evidence to support a finding that she is unable to perform the mental demands of work because of the combined effects of her conditions.   Gregg testified she has had anxiety attacks once or twice a month for the past ten or eleven years, and takes medicine when this occurs.   (Tr. 32).   However, she receives no mental health treatment.   (Tr. 33).   Although Gregg states she went to a mental health professional and was diagnosed with PTSD due to past abuse, (tr. 33), there is no evidence of this visit in the record.[7]   Upon examination, Dr. Gragg, found Gregg to be poised and cooperative, well-oriented in all spheres, suffering from no memory impairments and to have good attention and concentration as well as normal mood and affect.   (Tr. 204).   No doctor had opined that Gregg's abilities to carry out and remember instructions, use judgment, respond

---

[6] The Grids provide an algorithm to determine claimants' ability to engage in employment other than their past work based on factors such as a person's age, education, previous employment, and maximum physical capabilities. *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985). Each variable on the appropriate Grid must "accurately [describe] the claimant's situation." *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987).  "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

[7] The only evidence of any mental health treatment in the record is contained in Gregg's  treating physician's office records.  From an April 26, 2010, office visit the record reflects "anxious, stressed – she has been seen in Hope Clinic at Jasper – ." (Tr. 188).  Over two years later, on June 22, 2012, another record states, "[s]he has run out of insulin and is not taking anything but metaformin and glipizide ...  Very depressed.  Suicidal thoughts.  Going to go to counseling." (Tr. 239).

appropriately to supervision, or deal with changes in a routine work setting were in any way limited.  *See* 20 C.F.R §§ 404.1521(b); 416.921 (b).

Moreover, as the defendant responds, (doc. 15 at 5-6), the Grids are applied at Step Five of the ALJ's analysis, in relation to whether a claimant can adjust to other work in the national economy, after a finding that a claimant cannot return to past relevant work at Step Four.  *See e.g., Norton v. Commissioner*, — Fed. Appx. —, 2015 WL 1600426, *2 (11th Cir. 2015); *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004).  Once the ALJ determined that Gregg could return to her past work as a cashier or a library assistant, at Step Four, he properly did not undertake any determination in regard to Step Five.  Because Gregg failed to show that any of her diagnoses significantly limited her ability to engage in her past relevant work, she has not shown any error in the ALJ's conclusion.

Having reviewed the evidence in the record, the undersigned finds the decision of the ALJ was supported by substantial evidence.

## V. Conclusion

For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

DONE this 21st day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE